TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00323-CR






Duryl Mark Bird, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 8506, HONORABLE CHARLES HEARN, JUDGE PRESIDING 







 Duryl Mark Bird was convicted by a jury of deadly conduct and sentenced by the
district court to ten years in prison. Bird contends that the trial court erred by overruling his
motion to suppress and by admitting evidence of prior convictions over various objections. We
will affirm the judgment.

 This appeal arises out of an altercation between Bird and a group of people. There
is conflicting testimony over whether the group agitated Bird and provoked his response, but there
is no dispute on appeal that Bird shot at a vehicle in which Bryan Muccigrossi was riding. Police
officers responding to the shooting chased and stopped Bird. One of the officers seized a rifle
from Bird's pickup. The jury found Bird not guilty of aggravated assault of Richard Wills, but
found Bird guilty of deadly conduct toward Muccigrossi. In making that finding, the jury found
that Bird intentionally or knowingly discharged a firearm at or in the direction of Muccigrossi
while using and exhibiting a deadly weapon. See Tex. Penal Code Ann. § 22.05(b) (West 1994).

 Bird contends first that the trial court erred by denying his motion to suppress the
rifle found in his pickup truck. He contends that the search of his truck revealing the rifle was
unconstitutional.

 Officer Jeffrey Goad of the Burnet Police Department was the only person to testify
at the hearing on the motion to suppress. Goad testified that, while inside the Burnet police
station, he heard rifle shots. The dispatcher told him that a drive-by shooting had occurred at the
Fastway Food convenience store three blocks from the police station. Goad testified on cross-examination that Pam Schillings, a civilian, reported the shootings. The dispatcher also told Goad
that the shooter was in a champagne-colored, extended-cab pickup. There was no description of
the driver or any passengers (or even whether there were any passengers). As Goad neared the
convenience store seconds later, he saw three vehicles leaving the Fastway Foods with the lead
vehicle going quite fast. Because it was night, he could see only the taillights of the cars. Goad
caught the lead vehicle by driving over 120 miles per hour; once he caught the lead vehicle, he
kept pace by driving over 100 mph--well above the posted speed limit of 65 mph. (A sheriff's
deputy who met the chase caravan and joined it as backup told Goad his radar showed the lead
vehicle driving 102 mph; Goad conceded that he was following so closely that the radar might
have registered his car rather than Bird's truck.) When he got close enough, Goad discovered that
the vehicle was a champagne-colored Chevrolet pickup.

 Once he had matched the vehicle descriptions and had another peace officer
following him, Goad activated his emergency lights and siren to signal the lead vehicle to stop. 
The pickup stopped within two miles, not a great distance given the speed at which they were
traveling. The other police officers responding were Burnet County Sheriff's Deputy Kincaid and
Bertram Police Department Officer Baladez. The officers approached with guns drawn and
handcuffed Bird because of the violent nature of the suspected offense. Bird, the driver of the
pickup, got out of the car voluntarily, lay on the ground, and did not resist. Goad then put Bird
into his cruiser.

 Though Bird was handcuffed and sitting in the back of Goad's police car, Goad had
not yet decided whether he would arrest Bird for speeding or something else until he saw Baladez
holding a rifle from Bird's truck. Goad testified that Baladez said he saw the rifle in plain view
inside the pickup; Goad, however, first saw the rifle in Baladez's hands. The officers unloaded
the rifle and checked to see if it was stolen. Goad then inventoried the contents of the vehicle,
preparing to have it towed. He conducted the inventory to establish the condition and contents
of the vehicle before it was towed to eliminate possible charges of damage and theft from the
vehicle. Goad found a marihuana pipe underneath the driver's seat, another pipe in the glove box,
rolling papers in the back behind a fold-down seat, and a spent rifle cartridge on the passenger
side floorboard. Goad said he did not note any damage to the pickup, though he did not look
specifically for bullet holes. Goad testified that he never questioned Bird regarding the shooting.

 Bird argued at trial that the State had not presented sufficient admissible evidence
to justify the search of the vehicle that produced the rifle. He contended that the plain-view
testimony was inadmissible hearsay from Baladez reported by Goad. He contended that the
inventory search was not justified because, without a legal seizure of the rifle, the officers were
detaining Bird on a speeding charge; he posited that Texas officers cannot confine speeders in jail
unless they refuse to promise to appear in court to respond to the charge. Bird contended that,
though there was evidence he drove fast, there was no evidence that he drove recklessly so as to
justify an arrest on that basis without being given the option of release upon promising to appear
in court.

 Because the search of the pickup was admittedly warrantless, the State had to prove
the search was reasonable. See Russell v. State, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986);
see also Hernandez v. State, 983 S.W.2d 867, 869 (Tex. App.--Austin 1998, pet. ref'd). Items
found in plain view may be seized without a warrant if the officer has a legitimate reason to be
at the scene of the find, the discovery of the item is inadvertent, and the officer has probable cause
to believe that the item in plain view is evidence. See Howard v. State, 599 S.W.2d 597, 603
(Tex. Crim. App. 1979). We also note that the overruling of a motion to suppress can be
rendered harmless if other evidence that proves the same fact that the inadmissible evidence sought
to prove is admitted at trial. See Willis v. State, 785 S.W.2d 378, 383 (Tex. Crim. App. 1989),
cert. denied, 498 U.S. 908 (1990); see also McCain v. State, 995 S.W.2d 229, 235 (Tex.
App.--Houston [14th Dist.] 1999, pet. ref'd untimely filed).

 Bird's speed alone justified stopping his pickup. Goad had independent knowledge
of Bird's speed from monitoring the speed needed to stay near Bird's pickup until backup joined
the chase. Baladez's radar reading of 102 mph reinforces the conclusion that Bird was speeding;
even if the radar measured Goad's speed, Goad was then keeping pace with Bird, and the speed
of 102 mph indicates that Bird was exceeding the speed limit of 65 mph.

 The seizure of the rifle was reasonable. Though Goad had secured Bird outside
the car, the officers did not know whether Bird was alone. Baladez testified at the trial that, when
he went to secure the vehicle from the passenger side, he saw the rifle lying on the back seat of
the extended cab pickup. The backseat is a legitimate place to look to determine whether another
person might be lurking to harm the officers and others. Given the nature of the dispatch, the
officers had a legitimate reason to be there, to look there, and to believe that the rifle was
evidence of a crime. This fulfills the elements of the plain-view doctrine.

 Baladez's testimony at trial also rendered harmless any taint of hearsay at the
suppression hearing. Bird complains that Goad's testimony at the suppression hearing that
Baladez told him the rifle was in plain view was hearsay. The jury, however, was not affected
by that hearsay because Baladez testified at trial. At trial, Goad testified that Baladez showed him
a rifle that had been removed from the truck. That is not hearsay. Baladez testified directly
regarding his discovery of the rifle. Because there was no error in admitting the evidence of the
rifle at trial, any error in overruling the motion to suppress was harmless because it did not affect
a substantial right. See Tex. R. App. P. 44.2(b).

 Bird next complains that the district court erred by receiving evidence of a prior
federal conviction in inadmissible form. Bird complains on appeal of the admission of Exhibit
3, a judgment of conviction for conspiracy to possess firearms from a federal district court. (1) Bird
objected at trial that the judgment was hearsay and was not a certified copy. He contends on
appeal that the sponsoring witness "clearly acted like he had never seen such an instrument, could
not discern whether or not it was a certified copy, and otherwise failed to produce sufficient
evidence to support the admission of the document."

 We examine the admission of evidence for an abuse of discretion. See Kelly v.
State, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992); Montgomery v. State, 810 S.W.2d 372,
390-93 (Tex. Crim. App. 1991) (on rehearing). A trial court does not abuse its discretion if its
"ruling was at least within the zone of reasonable disagreement." Montgomery, 810 S.W.2d at
391. Under this standard, we "view the evidence in the light most favorable to the trial court's
ruling," affording almost total deference to findings of historical fact supported by the record. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

 We conclude that Bird has not shown reversible error. The district court
recognized the federal district judge's signature and admitted the exhibit. See Tex. R. Evid.
902(2). Other evidence of the federal conviction came from the supervising probation officer who
testified that Bird successfully completed his parole following that offense. The probation officer
testified that Bird's sentencing documents showed that Bird committed a federal offense of
possession of explosive devices. The probation officer also sponsored Exhibit 4, Bird's
supervision file, which contained photographs of Bird. Proof of the conviction was not an element
of the offense or necessary for enhancement of the offense level and punishment range. The
probation officer's testimony provided ample evidence of the prior conviction that was relevant
to punishment. We resolve issue two against Bird.

 Having resolved all issues against Bird, we affirm the conviction and punishment.



 
 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: July 13, 2000

Do Not Publish
1. Though Bird restates in his issue on appeal that he complained at trial of the admission of
Exhibits 1 and 2, he does not submit argument or authorities in support of those complaints on
appeal. We construe this to mean he is not raising these issues on appeal. See Tex. R. App. P.
38.1(h). Regardless, his complaint regarding Exhibit 1--that the State offered proof of a charge
dismissed after Bird completed his deferred adjudication probation--does not state an error. See
Tex. Code Crim. Proc. Code Ann. art. 42.12, § 5(c)(1) (West 2000). His complaint regarding
Exhibit 2--his criminal history redacted to exclude everything but a list of his felonies and
misdemeanors resulting in confinement--does not show that the district court abused its discretion
by allowing the list of previous convictions. See Tex. Code Crim. Proc. Code Ann. art. 37.07,
§ 3(a) (West Supp. 2000).



her
person might be lurking to harm the officers and others. Given the nature of the dispatch, the
officers had a legitimate reason to be there, to look there, and to believe that the rifle was
evidence of a crime. This fulfills the elements of the plain-view doctrine.

 Baladez's testimony at trial also rendered harmless any taint of hearsay at the
suppression hearing. Bird complains that Goad's testimony at the suppression hearing that
Baladez told him the rifle was in plain view was hearsay. The jury, however, was not affected
by that hearsay because Baladez testified at trial. At trial, Goad testified that Baladez showed him
a rifle that had been removed from the truck. That is not hearsay. Baladez testified directly
regarding his discovery of the rifle. Because there was no error in admitting the evidence of the
rifle at trial, any error in overruling the motion to suppress was harmless because it did not affect
a substantial right. See Tex. R. App. P. 44.2(b).

 Bird next complains that the district court erred by receiving evidence of a prior
federal conviction in inadmissible form. Bird complains on appeal of the admission of Exhibit
3, a judgment of conviction for conspiracy t